UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN LANCASTER, | ) | CASE NO.: 1:10CV2841 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION & ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Susan Lancaster's Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his November 4, 2009 decision in finding that Plaintiff was not disabled because she has the residual functional capacity (RFC) to perform light work (Tr 8-22). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.      PROCEDURAL HISTORY**

Plaintiff, Susan Lancaster, filed her application for DIB and SSI on January 22, 2007, alleging she became disabled on March 15, 2003 due to bipolar disorder and various physical impairments (Tr. 147-159). Plaintiff's application was denied initially and on reconsideration (Tr. 97-112, 116-129). Plaintiff requested a hearing before an ALJ, and on October 7, 2009, a hearing was held where Plaintiff appeared with counsel and testified before an ALJ (Tr. 23-55) and a vocational expert, also testified (Tr. 50-54).

On November 4, 2009, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr.8-22). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-7, 265-268). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 1383(c)(3).

**II.    STATEMENTS OF FACTS**

Plaintiff was thirty-six years old as of March 15, 2003, her alleged disability onset date (Tr. 136). She has a high school diploma and completed trade school for executive secretarial training (Tr.31). Plaintiff previously worked jobs such as administrative assistant and optical systems specialist. (Tr. 212).

**III.   SUMMARY OF MEDICAL EVIDENCE[1]**

Plaintiff saw psychiatrist Gregory Noveske, M.D., from February 1998 until May 2005 (Tr. 366). Dr. Noveske reported in February 2006 that Plaintiff had "{s}ome depression" and "{s}ome difficulties interpersonally with irritability" (Tr. 367). He opined that Plaintiff had no restrictions on her daily activities due to psychiatric issues, had a "fair" ability to tolerate stress, and experienced a fair response to treatment (Tr. 367-68).

In June 2006, Deborah Koricke, Ph.D., performed a psychological evaluation (Tr. 399-402). Plaintiff denied having ever undergone psychiatric hospitalization, but indicated that she had to take medications to maintain her mood (id.). She told Dr. Koricke that she spent the majority of her days caring for her children, and she enjoyed watching her children play sports and participate in other activities (Tr. 401). Dr. Koricke opined that Plaintiff was moderately impaired in her ability to relate to others; maintain attention, concentration, persistence, and pace; and withstand the stress and pressure of daily work activity (Tr. 402). She found Plaintiff mildly impaired in her ability to understand, remember, and follow instructions (id.). Dr. Koricke assigned Plaintiff a Global Assessment of Functioning (GAF) score of 43 (id.), which indicates serious mental impairment symptoms. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM)

---

[1]Plaintiff asserts no objections to parts of the ALJ's decision, including his evaluation of her alleged physical impairments and related limitations. Therefore, the undersigned considered only evidence and arguments dealing with mental residual functional capacity.

-2-

at 34 (4th ed. 2009). A year later, Dr. Koricke examined Plaintiff again and affirmed most of her opinions (Tr. 642-46). Dr. Koricke noted that Plaintiff's mood swings "decreased in intensity with her medication" (Tr. 644).

State agency reviewing doctor Roseann Umana, Ph.D., completed a mental residual functional capacity assessment in July 2006 (Tr. 438-55). Dr. Umana opined that Plaintiff was able to understand, remember, and carry out simple and some more complex instructions (Tr. 440). Plaintiff's social functioning was "adequate for superficial and occasional interactions" (id.). Dr. Umana found Plaintiff's stress tolerance was adequate for low-stress work and settings that did not require adherence to strict time and production standards (id.).

Plaintiff stopped seeing Dr. Noveske because her insurance changed (Tr. 597, 745). She began psychiatric treatment at the Far West Center in May 2006 (Tr. 744-51). Plaintiff reported that her medications helped manage her symptoms and caused no side effects (id.). She was "doing okay," staying busy, and taking care of her children (Tr. 597). Josephine Sabharwal, M.D., and her colleague Wendy Scott, Ed. D., P.C., assigned Plaintiff a GAF score of 60 (Tr. 598, 744), which is at the high end of "moderate" symptoms. DSM at 34. Plaintiff was prescribed medication and visited Dr. Sabharwal and Far West Center social workers on a near-monthly basis through March 2007 (Tr. 599-610, 724-44). Plaintiff repeatedly reported that her mood was "okay" or "fine" and stabilized on medication (Tr. 600, 602, 603, 606).

In April 2007, state agency doctor Nancy McCarthy, Ph.D., reviewed Plaintiffs's file and completed a functional capacity assessment (Tr. 651-68). Dr. McCarthy opined that Plaintiff was not significantly limited in her ability to understand, remember, and carry out simple instructions, work close to others, and interact appropriately with the general public (Tr. 651-52). She gave weight to the "totality of the evidence in the file" and concluded that Plaintiff retained "significant capacity for some types of work and would function optimally in a work environment that does not involve strict production quotas, pressure to perform rapidly or extensive contact with others" (Tr. 653-54). Another state agency reviewing doctor, Melanie Bergsten, Ph.D., affirmed Dr. McCarthy's opinion in September 2007 (Tr. 707).

Dr. Sabharwal left Far West Center in March 2007 (Tr. 724). Thus, Plaintiff started seeing

Raul Hizon, M.D., several months later (Tr. 716-23). Plaintiff routinely reported a stable mood and Dr. Hizon noted "good" activities of daily living (Tr. 719, 722, 864, 866, 867). On numerous occasions, Dr. Hizon recorded that Plaintiff exhibited or reported no major depressive or manic symptoms (Tr. 860, 862, 920). In June 2009, Plaintiff reported feeling more stress because of family issues (Tr. 958), but the following month Plaintiff was calm and stable with "no signs of impairment" (Tr. 957). She felt "less distressed" in August 2009 (Tr. 955). One week later, Plaintiff's counsel called Dr. Hizon, claiming that Plaintiff had verbalized suicidal ideation (Tr. 954). However, Plaintiff denied suicidal ideation or any feelings of distress (id.).

Dr. Hizon completed a mental impairment questionnaire in August 2009 (Tr. 961-66). He assessed that Plaintiff's current GAF score was 60, but had been as high as 70, indicating "some mild symptoms," in the past year (Tr. 961). DSM at 34. Nonetheless, Dr. Hizon opined that Plaintiff was unable to deal with normal work stress, respond appropriately to work place changes, interact appropriately with the general public, or maintain socially appropriate behavior (Tr. 963-64). He also stated that Plaintiff had marked limitations in activities of daily living and maintaining concentration, persistence, or pace, and had experienced three or more episodes of decompensation within 12 months, each at least two weeks long (Tr. 965).

## IV. SUMMARY OF TESTIMONY

Plaintiff testified with counsel before the ALJ in October 2009 (Tr. 23-25). She started treatment and medication for depression in 1996, but only had problems related to depression while working "on and off" (Tr. 38). She described her depression as situational, increasing when certain problems arose (Tr. 39). Plaintiff testified that when her doctor adjusted her medications to the "right level, then the depression is good" (Tr. 39). Plaintiff's activities included taking care of her pets, watching television, vacuuming, reading magazines, doing laundry, cooking, making her bed, going to the movies, visiting friends, grocery shopping, and driving (Tr. 39-43). She got along with "most people" (Tr. 43).

Thereafter, a vocational expert testified at the hearing (Tr. 50-54). The ALJ asked the expert whether there were jobs that a person with Plaintiff's vocational profile could perform if limited by certain physical restrictions and to only simple, repetitive tasks, "but not in a fast-paced production

environment such as on an assembly line" (Tr. 53). The expert testified that such a person could perform various jobs, of which he gave examples (Tr. 53-54).

### V. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden at step five to show that alternate jobs in the economy are available to the claimant, considering her age, education, past work experience and residual functional capacity. *See, Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### VI. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See*, *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *See, Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## VII.   ANALYSIS

Plaintiff objects to the ALJ's decision on one ground. She claims that the ALJ should have given greater weight to Dr. Hizon's opinion and to the most severe limitations prescribed by Dr. Koricke (Plaintiff's Brief 5-6).

The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, fibromyalgia, arthritis, degenerative disc disease, bipolar disorder, status post trigger finger surgery, and obstructive sleep apnea (Tr. 13). Plaintiff did not meet or medically equal a listed impairment, but retained the residual functional capacity to perform certain physical exertional work if also "limited to simple, repetitive tasks with no fast paced production work (such as assembly line work)" (Tr. 14-16). After giving proper weight to the treating physicians, the ALJ found that, considering the vocational expert's testimony, Plaintiff was able to perform a significant number of jobs in the national economy and was therefore not disabled (Tr. 20-22).

It is well settled that opinions of treating physicians should be given greater weight if the opinion is based on sufficient medical data. . *Houston v. Sec'y of Health & Human Servs*., 736 F.2d 365 (6th Cir. 1984). *Garner v. Heckler,* 745 F.2d 383, 391 (6th Cir. 1984). Furthermore, the medical opinion and diagnosis of a treating physician is given complete deference if the opinion is

uncontradicted. *Harris v. Heckler*, 756 F. 2d 431, 435 (6th Cir. 1985); *Walker v. Secretary of Health and Human Services*, 980 F. 2d 1066, 1070 (6th Cir. 1992).

When weighing the treating physician's opinion, the ALJ is to consider the consistency of opinion with the record as a whole. See 20 C.F.R. Section 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Although treating source opinions may receive controlling weight in certain circumstances, it is considered "error to give an opinion controlling weight simply because it is the opinion of a treating source" unless it is well-supported and consistent with the record as a whole. Social security Ruling (SSR) 96-2p, 1996 WL 374188, at *2; See also *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). State agency reviewing doctors' opinions "may be entitled to greater weight than the opinions of treating or examining sources" when more consistent with the record as a whole. SSR 96-6p, 1196 WL 374180, at *3.

State agency reviewing doctors Umana, McCarthy, and Bergsten agreed, based on their reviews of Plaintiff's medical record, that she was capable of understanding, remembering, and carrying out simple instructions and tolerating low-stress work that did not require adherence to strict time and production standards (Tr. 440, 651-54). Dr. Umana noted that Plaintiff's social functioning was "adequate for superficial and occasional interactions," and Drs. McCarthy and Bergsten agreed that Plaintiff was not significantly limited in her ability to work close to others and interact appropriately with the general public (Tr. 440, 651-52).

Consultative examiner Dr. Koricke opined that Plaintiff's "current level of emotional symptoms...make it unlikely that she would be able to appropriately interact with others in the workplace for a sustained period of time" (Tr. 402). She assigned Plaintiff a GAF score of 43 (id.), which indicates serious mental impairment symptoms. DSM at 34. Nonetheless, Dr. Koricke found Plaintiff only mildly impaired in her ability to understand, remember, and follow instructions, and moderately impaired in her ability to relate to others, maintain attention and concentration, and withstand the stress of daily work (id.).

The ALJ gave greater weight to the opinions of Drs. Umana, McCarthy, Bergsten, and

Koricke, to the extent they were consistent with the record as a whole (Tr. 19). He correctly explained that Dr. Koricke's GAF score assignment of 43 (serious mental limitations) was inconsistent with her findings that Plaintiff experienced only mild or moderate limitations in various functional activities and areas (Tr. 19). The ALJ also correctly found that prescribed limitations related to social interaction were not warranted, based in large part on Plaintiff's own testimony (id.). Indeed, Plaintiff testified that she went to the movies, visited friends, went grocery shopping, and lived with a friend, all of which involve social interaction with others (Tr. 42-43). Plaintiff stated that "I can get along with most people" (Tr. 43). She told Dr. Koricke that she spent the majority of her days caring for her children, and she enjoyed watching her children play sports and participate in other activities (Tr. 401). Hence, the record supports the ALJ's assessment of Plaintiff's ability to interact with others.

The remainder of these doctors' opinions were consistent with the ALJ's finding that Plaintiff was not disabled, and the record as a whole supported their findings.

Dr. Hizon was the only medical source who ascribed severe and disabling functional limitations. Dr. Hizon opined that Plaintiff was unable to deal with normal work stress, respond appropriately to work place changes, interact with the general public, or maintain socially appropriate behavior (Tr. 963-64). He ascribed "marked" limitations in every functional area (Tr. 965). Despite this, the doctor opined that Plaintiff's current GAF score was 60, indicating only moderate symptoms (Tr. 961). Dr. Hizon also concluded that Plaintiff had experienced three or more episodes of decompensation within a 12-month period of time, each for at least two weeks in duration (Tr. 965).

The ALJ correctly explained that he gave "less weight" to Dr. Hizon's opinion because it was inconsistent with the record as a whole, including Dr. Hizon's own treatment notes, and was "internally inconsistent". Dr. Hizon contradicted himself within his written functional assessment. (Tr. 19). Dr. Hizon assigned Plaintiff a GAF score of 60 (Tr. 961), indicating that Plaintiff experienced the high end of "moderate" functional limitations. DSM at 34. Yet Dr. Hizon also assigned Plaintiff "marked" limitations in every functional area, including activities of daily living, social interaction, and maintaining concentration (Tr. 965).

The ALJ also indicated that Dr. Hizon opined that Plaintiff had experienced three or more episodes of decompensation that lasted for at least two weeks in duration (Tr. 965). However, the record had no evidence therein supporting this contention (Tr. 15, 19). As the ALJ stated, Plaintiff never was hospitalized for depressive or manic symptoms, and any alleged exacerbations in her condition were short-lived and treated successfully with medicine and counseling (Tr. 15, 17-18).

Plaintiff's own treatment notes do not support Dr. Hizon's opinion . They actually support the opinions of Dr.s Umana, McCarthy, Bergsten, and Koricke. For example, Dr. Noveske, Plaintiff's first treating psychiatrist, found that Plaintiff had no restrictions due to psychiatric issues on her daily activities, had a "fair" ability to tolerate stress, and experienced a fair response to treatment (Tr. 367-68, 594-95). Treating sources Sabharwal, Scott, and Hizon all assigned Plaintiff GAF scores of 60 (Tr. 598, 744, 961), indicating that Plaintiff experienced no worse than the high end of moderate functional limitations. DSM at 34. Dr. Sabharwal recorded that Plaintiff admitted she was "doing okay" and staying busy (Tr. 597), and he frequently noted that Plaintiff's mood was "okay," "fine," and stabilized on medication (Tr. 600, 602, 603, 606).

Dr. Hizon's own treatment notes do not support Dr. Hizon's opinion. During many of Plaintiff's Treatment sessions, Dr. Hizon recorded that Plaintiff's mood was stable, that she had "good" activities of daily living, or that she was experiencing no major depressive or manic symptoms at all (Tr. 719, 722, 860, 862, 864, 866, 867, 920). While his treatment notes reflected an exacerbation in depressive symptoms in mid-2009, Dr. Hizon indicated that this exacerbation was situational, related to a specific problem in Plaintiff's family (Tr. 958). Moreover, Dr. Hizon noted that Plaintiff was "less distressed" and showed "no signs of impairment" shortly thereafter (Tr. 955, 957).

Plaintiff does not discuss her treatment history with Drs. Noveske, Sabharwal, and Hizon, and the mild or moderate functional limitations prescribed by Drs. Koricke, Umana, McCarthy, and Bergsten. She argues that the ALJ should have accepted Dr. Hizon's opinion and several portions of Dr. Koricke's opinion, which are not supported by the record. (Plaintiff's Br. 3-6). The ALJ correctly found that the record did not support Dr. Hizon's opinion, including limitations related to Plaintiff's ability to interact with others (Tr. 15-19).

**VIII.    CONCLUSION**

The ALJ reasonably analyzed the medical source opinions, giving greater weight to portions of the opinions of the state agency reviewing doctors and the consultative examiner that were consistent with the record as a whole. (Tr. 19). He correctly explained why he gave less weight to the opinion of treating Dr. Hizon and portions of Dr. Koricke's opinion as their opinions were inconsistent with Dr. Hizon's own treatment notes and reports (Tr. 19).

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform certain physical exertion work if also "limited to simple repetitive tasks with no fast paced production work (such as assembly line work)" (Tr. 14-16). The ALJ correctly found that considering the vocational experts testimony, Plaintiff was able to perform a significant number of jobs in the national economy and was therefore not disabled (Tr. 20-22). Hence, she is not entitled to DIB and SSI.


DATE: October 31, 2011                         /s/George J. Limbert
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE